**IN THE COURT OF APPEALS OF IOWA**

No. 15-0890
Filed September 14, 2016


**O'REILLY AUTO PARTS and INDEMNITY
INSURANCE COMPANY OF NORTH AMERICA,**
    Plaintiffs-Appellants,

**vs.**

**JOSEPH KUDER,**
    Defendant-Appellee.
_____


Appeal from the Iowa District Court for Polk County, Eliza J. Ovrom,

Judge.


An employer appeals the denial of its petition to reopen a workers'

compensation award of industrial disability benefits to its former employee.

**AFFIRMED.**


Richard C. Garberson and Dana L. Oxley of Shuttleworth & Ingersoll,

P.L.C., Cedar Rapids, for appellants.

Eric J. Loney of Loney & Schueller, L.L.C., West Des Moines, for appellee.


Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

O'Reilly Auto Parts[1] contests the refusal of the workers' compensation commissioner to reopen the October 2012 award of permanent total disability benefits to its former employee Joseph Kuder. O'Reilly claims the agency committed legal error when considering whether Kuder's economic circumstances had changed, applied an improper burden of proof, and reached its decision without substantial evidence. Because the agency's decision hinged on O'Reilly's failure to prove Kuder's earning capacity had increased since the original award, we find no legal error in its process. On the question of substantial evidence, like the district court, we believe the agency's refusal to reopen was based on ample information that Kuder faced the same loss of access to the job market as he had at the time of the original award. Accordingly, we affirm.

## I.    Facts and Prior Proceedings

Kuder injured his right shoulder in the summer of 2007 while lifting car batteries at an O'Reilly Auto Parts warehouse. The shoulder injury required surgery, and his physician restricted him from lifting any more than twenty-five pounds. Kuder's employment with O'Reilly ended in December 2008 because the company could not accommodate his permanent work restrictions.

In September 2011, the deputy workers' compensation commissioner determined Kuder's injury should be rated at eight percent impairment of the body as a whole and awarded him permanent total disability benefits based on

---

[1] O'Reilly's insurance carrier, Indemnity Insurance Company of North America, is also a party to this action. For ease of reference, we will refer to the plaintiffs-appellants collectively as O'Reilly throughout this opinion.

the finding of an industrial disability. The commissioner affirmed the arbitration ruling in October 2012. O'Reilly did not seek judicial review.

But just one month later, O'Reilly filed the present action for review and reopening of that award. *See* Iowa Code § 86.14(2) (2011). The employer's November 26, 2012 petition alleged "[c]hanges in circumstances have occurred warranting a reduction in Claimant's entitlement to weekly benefits for work-related impairment/disability." At the agency's October 2013 hearing, O'Reilly's counsel acknowledged "there are no physician-imposed changes" to Kuder's physical restrictions. The employer instead contended a change of conditions evidenced by Kuder's "substantial increase in hours that he worked at a fast food restaurant" and by "a substantial change in the employment environment."

Kuder was thirty-two years old at the time of the review-reopening hearing. He testified with the exception of his right shoulder, he was in good physical condition. Kuder had a high school diploma. In school he received remedial help with reading and speech because of a learning disability.

At the time of the original arbitration hearing in July 2011, Kuder was living in Des Moines and working at B-Bops, a fast-food restaurant, where he took customer orders, operated the cash register, handed food to customers, and occasionally cooked. He could not open or close the restaurant due to his lifting restrictions. During 2012 and early 2013, Kuder worked an average of about twenty-six hours per week at B-Bops but sometimes worked as many as thirty-four hours per week. Kuder testified, sometime in 2013, he asked his manager to cut back on his hours because his shoulder was causing him pain.

In July 2013, Kuder voluntarily quit his job at B-Bops and moved to Milton, a small town in southeast Iowa. Kuder moved so he could be closer to his fiancé and his family, as well as to lower his living expenses. By the time of the review-reopening hearing, he had broken up with his fiancé but continued to live in Milton, where he was unemployed.

At the review-reopening hearing, O'Reilly presented testimony from vocational expert Scott Mailey, who was hired by the company to evaluate Kuder's employability. Mailey conceded Kuder suffered some degree of industrial disability due to his shoulder injury but identified more than one hundred job openings in the Des Moines area that would accommodate Kuder's work restrictions. When asked about Kuder's move to Milton, Mailey acknowledged the available jobs would be fewer but opined Kuder was still employable. Mailey also testified the economy has improved since 2011.

The deputy commissioner decided O'Reilly did not carry its burden to show "a change of condition indicating a decrease in claimant's disability has occurred." The deputy noted:

> Basically, claimant is just as disabled now as he was at the time of the arbitration decision finding him permanently and totally disabled. If anything, his job prospects are much poorer now than at the time of his prior award, given his residence in a small rural community rather than Des Moines.

On de novo review, the commissioner affirmed and adopted the deputy's decision, stating: "[I]t is evident claimant has not had any significant physical or economic change from the prior finding of an injury which permanently disables him from performing work within his experience, training, education, and physical

capacities." The district court denied O'Reilly's petition for judicial review, and the company now appeals.

## II.     Scope and Standards of Review

Iowa Code chapter 17A governs our review of O'Reilly's claims. *See id.* § 86.26; *Hill Concrete v. Dixson*, 858 N.W.2d 26, 30 (Iowa Ct. App. 2014). In reviewing workers' compensation appeals, we examine the judicial-review ruling of the district court, which is also acting in an appellate capacity, to see "if our legal conclusions mirror those reached by the district court." *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 225 (Iowa 2006). If we reach the same conclusions, we affirm; if not, we reverse. *JBS Swift & Co. v. Hedberg*, 873 N.W.2d 276, 279 (Iowa Ct. App. 2015)

O'Reilly acknowledges we are limited, at least to some extent, to a substantial-evidence review of the agency's denial of the employer's petition for review and reopening. Under that standard, we are bound by the agency's factual determinations if supported by "substantial evidence in the record before the court when that record is viewed as a whole." Iowa Code § 17A.19(10)(f); *Hedberg*, 873 N.W.2d at 280.

But O'Reilly also alleges the agency ignored "uncontroverted evidence"[2] and misapplied the burden of proof regarding reopening petitions filed by an employer. On these allegations, the employer contends we afford less deference

---

[2]     The record does not support the employer's assertion the evidence was uncontroverted. In its discussion of the review-reopening proceeding, the district court found: "Kuder retained vocational specialist Phil Davis to review Mailey's report and to review employment opportunities. Davis disagreed with Mailey's conclusions regarding Kuder's ability to work and his access to jobs. Davis opined that Kuder's permanent restrictions continued to be a barrier to Kuder obtaining and maintaining meaningful employment."

in deciding whether the agency's action was "[b]ased upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency"; was "[b]ased upon an irrational, illogical, or wholly unjustifiable application of law to fact that has clearly been vested by a provision of law in the discretion of the agency"; or was "[o]therwise unreasonable, arbitrary, capricious, or an abuse of discretion." Iowa Code § 17A.19(10)(c), (m), (n); *see also Hedberg*, 873 N.W.2d at 280.

## III.    Analysis of Employer's Claims

In a proceeding to reopen an award for workers' compensation payments, "inquiry shall be into whether or not the condition of the employee warrants an end to, diminishment of, or increase of compensation so awarded." Iowa Code § 86.14(2). The party seeking to reopen the award must show a change in the employee's "employment condition" by a preponderance of the evidence. *See Simonson v. Snap-On Tools Corp.*, 588 N.W.2d 430, 434 (Iowa 1999). It is possible for a party to make the necessary showing in a review-reopening proceeding without proof of a change in the employee's physical condition because industrial disability is the product of many factors. *See id.*; *Gallardo v. Firestone Tire & Rubber Co.*, 482 N.W.2d 393, 395 (Iowa 1992) (requiring proof employee has suffered a change in "earning capacity proximately caused by the original injury").

O'Reilly raises three issues related to the agency's denial of its petition to reopen the award of industrial disability benefits to Kuder. We will address each issue in turn.

**A. Did the agency mistakenly consider Kuder's economic condition based on the limited job opportunities in the small town of Milton rather than improved employment prospects in Des Moines as highlighted by the vocational expert hired by the employer?**

O'Reilly starts with the proposition that job availability is a key factor influencing a determination of a worker's earning capacity. *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 524–25 (Iowa 2012). From that starting point, O'Reilly argues the agency erred in considering "the lack of job opportunities in Milton" and in failing to consider "the significant increase in jobs available to Kuder in Des Moines" when Kuder voluntarily moved to the smaller community. O'Reilly contends "when an employer seeks a decline in benefits, the claimant should not be allowed to avoid an improvement in job opportunities in his community by voluntarily moving to a depressed area."

The district court rejected O'Reilly's focus on Kuder's move, concluding the agency correctly determined the employer had not shown Kuder's earning capacity had increased since the original award, regardless of whether he stayed in Des Moines or lived in Milton. The district court also noted it was the employer who broached the issue of Kuder's move to Milton through its vocational expert's testimony. The district court determined because the employer raised the issue at the hearing, the agency cannot be faulted for addressing the impact of the move in its arbitration decision.

We reach the same conclusion as the district court. The deputy commissioner noted Kuder's physical condition, impairment rating, work limitations, intellectual challenges, and education remained unchanged at the review-reopening hearing. Even before the move, Kuder worked only part-time

hours at a fast-food restaurant where he could not perform all of the tasks required of other employees. While the deputy did discuss the reduced job prospects Kuder faced in a rural community, the crux of the arbitration decision rested on the employer's failure to prove Kuder's *work capacity* had increased since 2012. Moreover, as the district court points out, the commissioner's appeal decision did not refer to the Milton job market but simply concluded Kuder had not experienced any "significant physical or economic change" since the original award.

O'Reilly asserts the agency improperly relied on the economy as it existed in Milton and ignored the "significantly increased number of jobs in Des Moines for which Kuder was qualified." That criticism is not a fair reading of the agency's review-reopening decision. The agency cited Mailey's opinion that Kuder was qualified for the Des Moines jobs based on his increase in shifts at B-Bops from sixteen to twenty-six hours per week. Mailey testified such an increase in work hours proved Kuder's "capability as far as pain" but didn't change the physical permanent restrictions imposed by his doctor. In the review-reopening decision, the deputy's finding that Kuder "credibly testified that working longer hours increased his pain" was adopted by the commissioner. The agency noted Kuder "was still only able to do limited duties at B-Bops" and concluded "[t]he fact he worked more part time hours for a time after the prior arbitration decision does not really show a physical change of condition or less disability." Neither was the agency persuaded by Mailey's reliance on the overall improvement in the economy, as that information was not specific to this worker.

We do not find the agency's decision that O'Reilly did not meet its burden to show a change in Kuder's condition to be irrational, illogical, or an unjustifiable application of law.

**B. Did the agency apply an improper burden of proof on the employer in the context of a review-reopening petition?**

O'Reilly next contends "[t]he proof requirements in the case of a review-reopening petition filed by the employer are inevitably different than when the employee seeks increased benefits." The company argues once the employer demonstrates the employee has regained partial work capacity, the burden of production should shift to the employee to show work is unavailable as a result of the injury. If the employee makes that showing, according to O'Reilly, the burden shifts back to the employer to show it is more probable than not work is available in the community within the employee's physical ability. O'Reilly asserts the agency did not follow this "shifting burden of production paradigm."

The district court determined the agency did not "specifically apply the burden-shifting approach" urged by O'Reilly. The court then assumed, without deciding, even if O'Reilly was advocating the correct approach,[3] the agency did not commit legal error because O'Reilly did not meet its initial burden to show a change in Kuder's work capacity. We agree with the district court.

Contrary to O'Reilly's argument, the district court's reasoning was sound. The agency and the district court considered Kuder's economic prospects along with his physical condition; they just did not accept the view of O'Reilly's expert

---

[3] We take no position on the propriety of adopting the employer's burden-shifting paradigm. We note O'Reilly asked the supreme court to retain this appeal to address the burden-of-proof issue, but the supreme court opted to transfer the case to us.

that a temporary toleration of ten additional hours per week at his previously held fast-food job constituted a substantial change in his employability, especially when the increase exacerbated his shoulder pain. Moreover, neither the agency nor the district court imposed a burden on O'Reilly to show Kuder could work full time, nor did they ignore Mailey's report concerning the availability of jobs in Des Moines.

O'Reilly has not demonstrated the agency misapplied the burden of proof as applied to petitions to reopen filed by employers under section 86.14(2).

**C. Did substantial evidence support the agency's denial of the employer's petition to review and reopen?**

O'Reilly also claims the agency's decision "fails a straight-forward substantial evidence review." This argument focuses on Kuder's increased work hours at B-Bops in late 2012 and early 2013. O'Reilly contends the only evidence to contradict its proof of Kuder's increased earning capacity is "Kuder's own vague and self-serving testimony that he asked for reduced work hours sometime in 2013 because his 'shoulder was causing [him] pain.'"

The deputy commissioner found Kuder credible in his complaint that working longer hours increased his shoulder pain. Under section 17A.19(10)(f)(3), when we assess whether substantial evidence supports the agency decision, we "consider the credibility determination by the presiding officer who had a chance to observe the demeanor of the witnesses." *Staff Mgmt. v. Jimenez*, 839 N.W.2d 640, 654 (Iowa 2013).

Substantial evidence supports the agency's conclusion that Kuder's extra hours at B-Bops did not establish an increase in his earning capacity or ability to

compete in the job market. Upon our deferential review, we believe the agency adequately considered all relevant industrial-disability factors and appropriately decided O'Reilly failed to show Kuder sustained an economic change of condition since the original award so as to justify a decrease in compensation benefits. *See Simonson*, 588 N.W.2d at 435.

**AFFIRMED.**