## IN THE COURT OF APPEALS OF IOWA

No. 17-0745
Filed March 21, 2018

**VELENE K. MERRICK,**
        Plaintiff-Appellant,

**vs.**

**CRESTRIDGE, INC. and IOWA LONG TERM CARE RISK MANAGEMENT ASSOCIATION,**
        Defendants-Appellees.

_____

        Appeal from the Iowa District Court for Scott County, Henry W. Latham II,

Judge.


        Claimant seeks judicial review of the workers' compensation

commissioner's decision denying her benefits. **AFFIRMED.**



        Matthew A. Leddin of Soper Leddin Law Firm, P.C., Davenport, for

appellant.

        Matthew R. Phillips of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines,

for appellees.


        Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

Claimant Velene Merrick seeks judicial review of the workers' compensation commissioner's decision denying her claim for industrial disability benefits. The workers' compensation commissioner concluded Merrick established she suffered a work-related injury to her shoulder but did not meet her burden of proof in establishing the shoulder injury resulted in permanent disability. The district court affirmed the agency's ruling, and Merrick timely filed this appeal. On appeal, Merrick contends the agency's decision is not supported by substantial evidence and the agency misapplied the law to the facts.

Iowa Code chapter 17A governs our review of the workers' compensation commissioner's decision. *See* Iowa Code § 86.26 (2017); *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 888 (Iowa 2014). Judicial review of final agency action is limited. *See* Iowa Code § 17A.19(10). "The administrative process presupposes judgment calls are to be left to the agency. Nearly all disputes are won or lost there." *Sellers v. Emp't Appeal Bd.*, 531 N.W.2d 645, 646 (Iowa Ct. App. 1995) (citation omitted). "When we review findings of the industrial commissioner, those findings carry the effect of a jury verdict. We will reverse an agency's findings only if, after reviewing the record as a whole, we determine that substantial evidence does not support them." *Terwilliger v. Snap-On Tools Corp.*, 529 N.W.2d 267, 271 (Iowa 1995). In determining whether the agency's decision is supported by substantial evidence, the ultimate question is not whether the evidence supports a different finding but whether it supports the findings the commissioner actually made. *See id.* "Further, the commissioner's application of law to the facts as found by the commissioner will not be reversed unless it is irrational, illogical, or wholly

unjustifiable." *Neal v. Annett Holdings*, Inc., 814 N.W.2d 512, 518 (Iowa 2012). Rarely will the judiciary reverse final agency action on the ground the decision is not supported by substantial evidence or involves an irrational application of the law to the facts. *See McComas-Lacina Constr. v. Drake*, No. 15-0922, 2016 WL 2744948, at *1 (Iowa Ct. App. May 11, 2016) ("A case reversing final agency action on the ground the agency's action is unsupported by substantial evidence or is irrational, illogical, or wholly unjustifiable is . . . an urban legend, rumored to exist but never confirmed.").

The agency record shows Merrick commenced employment with Crestridge, Inc., a retirement home, as a CNA in April 2011. Several months later, Merrick suffered an injury to her right shoulder when a patient grabbed or struck her arm. The record reflects Merrick had suffered a work-related injury to her right shoulder with a prior employer, but she had recovered from the injury before her employment with Crestridge. With respect to the injury at issue, Merrick claimed she felt a pop and experienced right shoulder pain. The same day, she treated with Dr. Bybee, a general practitioner, who recommended limited activity, pain management, and a follow-up. An x-ray was negative for fracture or dislocation. After several follow-up visits, Merrick was referred to Dr. Hussain, an orthopedic specialist.

Merrick began treating with Dr. Hussain in August 2011. Dr. Hussain's initial impression was Merrick "likely had an injury that has caused capsulitis." He ordered light-duty work, recommended physical therapy, and gave Merrick an injection in her shoulder to reduce pain and inflammation. At a follow-up appointment in September 2011, Dr. Hussain noted Merrick's underlying problem

was "multidirectional instability that probably got flared." He continued to recommend light-duty work, including lifting restrictions, and physical therapy. Dr. Hussain's records from a November appointment provide:

> She reports she is doing really well after injection therapy and physical therapy course. She is getting back pain-free range of motion and has regained motion quite significantly. She has some mild discomfort in her biceps tendon but is overall improving accordingly . . . She would like to go back to work in terms of full duty.
> . . . .
> Assessment: Resolving shoulder discomfort with marked improvement since last time I saw her.
>
> Plan: I am going to have her, per the recommendation of the therapist, do a home exercise program. We will release her to full duty with no restrictions in a month, but in the meanwhile I am going to limit her to lifting less than 50 pounds in order to help progress her back into normal activities to prevent recurrence of her symptoms. I will see her back if she has any further complaints.

Merrick was released to return to regular-duty work in December 2011, but she never returned to work for Crestridge. On December 8, Merrick was granted a change in work status to "PRN," an as-needed work arrangement, so she could pursue additional education. On PRN status, the employer and the employee contact each other to determine availability and schedule shifts. Merrick testified Crestridge contacted her on only one occasion and her calls to Crestridge were not returned. A Crestridge employee testified Crestridge tried to contact Merrick between 20-30 times but Merrick never responded. Regardless, the parties agree Merrick did not work following her release to return to regular duty.

In April 2012, Dr. Hussain concluded Merrick had a "full range of motion and lack of significant strength deficiency" and that "she has not suffered a permanent functional impairment." Dr. Hussain concluded Merrick did not have a permanent impairment and gave her a zero-percent impairment rating for her body as a whole.

In July, Merrick claimed she was still experiencing pain and limited movement in her right shoulder. She had an independent medical examination performed by Dr. Richard Kreiter. Dr. Kreiter concluded that Merrick had "Anterior shoulder instability with possible labral tear," that her continued injury was causally connected to her work injury, and that she had suffered a twenty-one percent upper-extremity impairment and a thirteen percent whole-person impairment. He stated an MRI and permanent physical restrictions were necessary.

Dr. Hussain decided to reevaluate Merrick. Dr. Hussain noted "the last two evaluations [were] quite divergent but also done at different timeframes so things could have changed." Dr. Hussain was "also concerned because in reviewing the History of Present Illness that Dr. Kreiter outlined, the timeline and course of symptoms as well as the potential response or lack thereof [were] also divergent form my evaluation as well as the therapist's evaluation." Merrick visited Dr. Hussain in December 2012 and January 2013. Dr. Hussain ordered an MRI, which showed no evidence of tears in the shoulder. He concluded there was "no evidence of instability." Dr. Hussain recommended physical therapy and gave Merrick another injection for pain management. After these visits, Dr. Hussain concluded "Merrick's current complaints are not causally related to her June 30, 2011 injury" and Dr. Kreiter's report and impairment ratings did not comport with his evaluations. Upon reexamination, he still concluded Merrick had no impairment rating. Crestridge declined to provide further treatment for Merrick.

Merrick sought industrial disability benefits. After the arbitration hearing, the deputy commissioner concluded, "Claimant has established she sustained a temporary injury to her right shoulder. She has not met her burden of proof in

establishing her right shoulder injury resulted in any permanent disability." The workers' compensation commissioner affirmed and adopted the deputy's findings and conclusions. The district court affirmed the agency's decision.

Merrick contends the agency's decision is not supported by substantial evidence and is irrational because "the agency ignored" Dr. Kreiter's report. We have stated, "The deference afforded the agency on substantial evidence review is predicated on the assumption the agency reviewed and considered the evidence in reaching its decision. . . . The agency is entitled to reconcile competing evidence, not ignore competing evidence." *JBS Swift & Co. v. Hedberg*, 873 N.W.2d 276, 280–81 (Iowa Ct. App. 2015). However, this is not a case in which the agency simply ignored evidence. The agency did credit Dr. Hussain's medical opinion over Dr. Kreiter's medical opinion, but the agency did not ignore Dr. Kreiter's medical opinion. Instead, the agency provided specific reasons why it found Dr. Hussain's opinion to be more credible and Dr. Kreiter's less so. Specifically,

> It is acknowledged Dr. Kreiter opined claimant had a 13 percent permanent impairment rating. However, Dr. Kreiter examined claimant on 1 occasion only. The exam occurred on July 26, 2012. At the time, claimant had not undergone the MRI arthrogram which established claimant had nothing more than tendonitis of the right shoulder. The independent medical examination occurred nearly 6 months prior to the additional medical treatment claimant underwent to rehabilitate her right shoulder. Dr. Kreiter did not have the benefit of the results of the MRI arthrogram when he rendered his opinion on impairment.

On substantial evidence review, our task "is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence . . . supports the findings actually made." *Id.* at 280. As a

general rule, medical questions are the exclusive domain of experts. *See Key City Transp., Inc. v. Delire*, No. 14-1755, 2015 WL 5285799, at *4 (Iowa Ct. App. Sept. 10, 2015). Whether to accept or reject expert opinion is within the province of the commissioner, who is free to do so in whole or in part, particularly when there is competing testimony. *See id.* A reviewing court may not accept the competing expert's opinion in an effort to reject the commissioner's findings of fact on medical questions. *See id.* Here, the agency considered the competing medical evidence and credited one expert over another. This was within the province of the agency.

In the same vein, Merrick argues the agency ignored her testimony and the testimony of her lay witnesses regarding her medical condition. We disagree. The agency considered the evidence and found it to be unpersuasive. This seems logical given the lay testimony contradicted the medical evidence the agency found more credible. "A reasonable person could weigh the lack of permanent impairment ratings and lack of objective measurements of injury against the lay testimony and [another doctor's] ambiguous opinion to find there was no permanent injury/functional impairment." *Hill v. Fleetguard, Inc.*, 705 N.W.2d 665, 674 (Iowa 2005).

We conclude the workers' compensation commissioner's findings are supported by substantial evidence and its application of the law to facts was not irrational, illogical, or wholly unjustifiable. The district court did not err in affirming the agency's action. We affirm the judgment of the district court.

**AFFIRMED.**