# IN THE COURT OF APPEALS OF IOWA

No. 17-1374
Filed June 20, 2018

**MUNIRA BAHIC,**
        Plaintiff-Appellant,

**vs.**

**MERCY MEDICAL CENTER d/b/a BISHOP DRUMM and INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.

        The claimant appeals from the district court's judgment affirming the commissioner's determination the employee's stipulated work injury did not cause her ongoing disability and symptoms after a specific date.  **AFFIRMED.**

        Nicholas W. Platt of Platt Law Firm, P.C., Urbandale, for appellant.

        Kent M. Smith of Scheldrup Blades Schrock Smith P.C., West Des Moines, for appellees.

        Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**POTTERFIELD, Judge.**

Munira Bahic appeals from the district court's judgment affirming the commissioner's determination that Bahic's stipulated work injury did not cause her ongoing disability and symptoms after the date of February 27, 2014. On appeal, Bahic claims the district court erred in its determination that substantial evidence supports the commissioner's ruling. Additionally, she claims the court was wrong to conclude the commissioner's reversal of the deputy's causation ruling was not irrational, illogical, or wholly unjustifiable.[1]

**I. Background Facts and Concluions.**

Bahic was born in 1959 in Bosnia. There, she completed her education through the eighth grade. She later lived in Germany with her family and worked outside of the home cleaning offices a few hours each week. After coming to the United States, Bahic began working in January 2001 for the employer, Mercy Medical Center—which was doing business as a residential care facility under the name Bishop Drumm. Through the employer, she took approximately two semesters of classes in English as a second language. She testified she was able to communicate verbally in English at work but was unable to write well in English. Bahic utilized an interpreter for her medical appointments as well as throughout the legal process.

---

[1] In her reply brief, Bahic raises a sixth claim of error, alleging the district court "erred in using the incorrect standard for denying the petition for judicial review." Insofar as this sixth claim is a new issue, "[a]n issue cannot be asserted for the first time in a reply brief." *Polk Cty v. Davis*, 525 N.W.2d 434, 435 (Iowa Ct. App. 1994). Thus, we do not consider this issue. *Id.*

In 2013, Bahic was working full-time as a prep cook. As part of her job requirements, Bahic would prepare food, load food and drink onto a cart, and then deliver those items to people within the facility. When loaded, the cart held the supplies for approximately 160 people. According to Mercy's description of the position of prep cook, the work required "constant" standing, lifting, and walking; "frequent" crouching, stooping, pulling, and pushing; and "occasional" climbing, kneeling, and lifting. Additionally, the "physical demand requirements" state, in part, "Heavy work: Exerting up to 65 pounds push/pull force occasionally, lifting up to 50 lbs. occasionally, lifting up to 40 lbs. frequently."

On February 11, 2013, Bahic suffered an injury at work when pushing a full cart to her first stop of the day. Bahic had to lift the back of the cart and twist it in order to maneuver around a corner. When she did so, she felt a sharp stabbing pain in her lower back. Bahic reported the injury to a coworker on the day it occurred and a supervisor the next day. She continued to perform her job until approximately two months later, when a supervisor noticed Bahic was unable to put her weight on one foot and was limping. The employer then arranged for Bahic to be seen by a medical professional at Mercy Clinics; Bahic reported experiencing ongoing back pain radiating down her right leg. She was given work restrictions and began working in a less physically-demanding position in the laundry room.

In October 2013, Mercy terminated Bahic's employment. The letter informed Bahic her termination did "not change [her] ability to receive Workman's Compensation benefits and treatment, if still under restrictions or treatment"—which she was. Additionally, she was advised she was eligible for rehire "if you

are released to return to work either without restrictions or to a position that meets your current restrictions."

Bahic continued to treat with a number of medical providers.

At the employer's request, Bahic saw Dr. David Boarini in February 2014 for an independent medical examination. In the resulting letter, sent February 27, 2014, Dr. Boarini opined:

> Upon examination, this is a normally developed woman. The examination was essentially impossible because of obvious pain exaggeration and symptom magnification. Testing was inconsistent, breakaway and clearly non physiologic. Straight leg raising was impossible to evaluate, once again because of massive symptom exaggeration. The patient complained of numbness in the entire right leg which was non physiologic. She split the midline to tuning fork testing which is a clear sign of malingering. Reflexes were symmetric and physiologic.
> I reviewed the patient's MRI scan and she has some degenerative changes mainly at L4-L5 with a small disc bulge and mild stenosis.
> In summary, this patient suffered an extremely minimal, if any, injury. There is no sign on her scan of a structural lesion related to that and in fact, it would be impossible to ascribe anything significant structurally in her back to the incident described. The fact that she did not seek any medical care at the time would go along with that hypothesis.

At both parties' agreement, Bahic saw Dr. Sergio Mendoza at the University of Iowa Hospitals and Clinics. Dr. Mendoza reviewed Bahic's MRI and opined she had suffered from L4-L5 degenerative stenosis with "disc material vs osteophyte vs. cyst." Dr. Mendoza proposed a posterolateral interbody fusion surgery. In September 2014, before performing the surgery, Dr. Mendoza opined "to the nearest degree of medical certainty, the causation of this injury is not related to work." In October, Dr. Mendoza performed the surgery.

Mercy paid Bahic workers' compensation benefits from the date of injury until February 19, 2015. At the time of the workers' compensation hearing in front of the deputy commissioner, on April 21, 2015, Bahic had unpaid medical bills from the University of Iowa.

Following the hearing, the deputy commissioner issued an arbitration decision finding Bahic permanently and totally disabled from her injury on February 11, 2013, and healing benefits were owed through February 27, 2015, at the rate of $387.32 per week. Additionally, the deputy awarded Bahic unpaid medical expenses, future medical expenses, and costs. In reaching this decision, the deputy gave greater weight to the opinions of Drs. Woolley, Bansal, and Harris and discounted the opinions of Drs. Mendoza and Boarini.

Mercy appealed the decision, and the commissioner reversed the deputy's ruling. The commissioner determined Bahic had reached maximum medical improvement (MMI) on February 27, 2014—based on the opinion of Dr. Boarini on that date. Additionally, the commissioner found that the "stipulated work injury of February 11, 2013" was not the cause of Bahic's ongoing disability and symptoms after the date of MMI. In reaching this conclusion, the commissioner "award[ed] greater probative value to the opinions of Dr. Mendoza, as buttressed by the opinions of Dr. Boarini." The commissioner found Dr. Mendoza's opinions to be most credible:

> due to his medical expertise, as compared to the remaining opining physicians. Additionally, and relatedly, Dr. Mendoza served as [Behic's] treating surgeon. As [Bahic's] treating surgeon, Dr. Mendoza possessed the unique opportunity to examine [Bahic] on multiple occasions, including intra-operatively. When this knowledge is coupled with Dr. Mendoza's expertise as an orthopedic surgeon, I find his opinion entitled to the greatest weight. The fact that the

parties jointly agreed to send [Bahic] to Dr. Mendoza for further evaluation and treatment supports a determination that he is a qualified surgeon.

The commissioner reversed the award of weekly benefits, future medical expenses, and costs.

Bahic filed a petition for judicial review, challenging whether the commissioner's findings of fact were supported by substantial evidence and whether the commissioner's reversal of the causation and permanent disability determinations were irrational, illogical, or wholly unjustifiable. The district court denied the petition, affirming the commissioner's ruling.

Bahic appeals.

## II. Discussion.

### A. Substantial Evidence.

Bahic challenges the district court's determination that the commissioner's findings of fact were supported by substantial evidence in the record. Specifically, Bahic challenges the commissioner's finding that Bahic's stipulated work injury of February 11, 2013 was not the cause of Bahic's ongoing disability and symptoms, that Bahic reached MMI on February 27, 2014, and that Bahic did not suffer a permanent disability as a result of her work injury.

"Medical causation presents a question of fact that is vested in the discretion of the workers' compensation commission." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011). Thus, we only disturb the commissioner's finding if it is not supported by substantial evidence. *Id.* (citing Iowa Code § 17A.19(10)(f) (2017)). Substantial evidence is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and

reasonable person to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). "When reviewing a finding of fact for substantial evidence, we judge the finding 'in light of all the relevant evidence in the record cited by any party that detracts from that finding as well as all of the relevant evidence in the record cited by any party that supports it.'" *Pease*, 807 N.W.2d at 845 (quoting Iowa Code § 17A.19(10)(f)(3)).

That being said, "[e]vidence may be substantial even though we may have drawn a different conclusion as fact finder." *Id.* "Our task, therefore, is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence, viewing the record as a whole, supports the findings actually made." *Id.* We do not reassess the evidence or make or our own determination of the weight it is to be given. *See Burns v. Bd. of Nursing*, 495 N.W.2d 698, 699 (Iowa 1993). "Because the commissioner is charged with weighing the evidence, we liberally and broadly construe the findings to uphold [the commissioner's] decision." *Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 558 (Iowa 2010). "In addition, we give due regard to the commissioner's discretion to accept or reject testimony based on his assessment of witness credibility." *Id.*

The present case is similar to *Pease*, where our supreme court was asked to determine "the issue of the extent to which expert testimony constitutes substantial evidence in a workers' compensation claim." 807 N.W.2d at 845. In *Pease*, experts for the parties provided conflicting opinions and the commissioner was ultimately forced to determine which expert opinions were more credible and

what weight to give each. *Id.* The employer asked our supreme court "to hold that the opinions relied upon by the commissioner were so flawed that they failed to constitute substantial evidence supporting the commissioner's findings." *Id.* at 845. Our supreme court declined to do so. *Id.*

Likewise, we decline to find that the experts relied upon by the commissioner were so flawed as to not constitute substantial evidence. While Bahic makes a number of specific arguments why the experts who opined her ongoing symptoms and disability was a result of a the February 2013 work injury are the better informed, more credible sources, "the determination of whether to accept or reject an expert opinion is within the 'peculiar province' of the commissioner." *Id.* "The courts, in their appellate capacity, 'are not at liberty to accept contradictory opinions of other experts in order to reject the finding of the commissioner.'" *Id.* at 850 (citation omitted).

Here, the commissioner determined the opinion of Dr. Mendoza had the "greater probative value . . . as buttressed by the opinions of Dr. Boarini."[2] The

---

[2] Additionally, the commissioner explained why the other the opinion of other doctors Bahic saw were given less weight:

> I find the opinions of Drs. Woolley, Harris, and Bansal entitled to lesser weight. Dr. Woolley is a physician practicing osteopathic manual manipulation. Dr. Woolley is not a qualified surgeon such as Drs. Mendoza and Boarini. She also, admittedly, noted examination findings "diametrically opposed" of prior treating physicians. This fact is particularly relevant given Dr. Woolley did not examine [Bahic] until over one year following the stipulated work injury, at a point in time after which Dr. Boarini opined [Bahic's] temporary injury had resolved. Dr. Mendoza also opined [Bahic's] work-related condition was, at best, a temporary exacerbation of an underlying degenerative condition. I find Dr. Harris' opinion entitled to little probative weight, given it was cursory in nature and he, too, is not a qualified surgeon. I find Dr. Bansal's opinion, while thorough and logical, is simply not entitled to as much deference as the opinions offered by the opinion surgeons.

commissioner reached this conclusion due to Dr. Mendoza's medical expertise as an orthopedic surgeon, his status as Bahic's treating surgeon, and the fact that he examined Bahic a number of times—"including intra-operatively." Additionally, the commissioner noted that the parties had jointly agreed to send Bahic to Dr. Mendoza.

Neither Dr. Boarini nor Dr. Mendoza found Bahic to have an ongoing condition after February 27, 2014, that was causally related to the stipulated work injury. Dr. Mendoza opined, "[T]o the nearest degree of medical certainty the causation of this injury is not related to work." Rather, he opined that Bahic's medical condition was related to chronic stenosis and underlying degenerative conditions. Similarly, Dr. Boarini opined that the Bahic had sustained only a minimal work injury and was otherwise suffering from a degenerative disease in her back. Bahic attacks Dr. Boarini's opinion as being reached without a complete evaluation; she maintains—and her interpreter and husband corroborated—that in spite of his claim to the contrary, he never used a tuning fork to complete a test. The commissioner explicitly found no credible basis to support the conclusion Dr. Boarini fabricated certain examinations. Thus, whether questioning Bahic's memory or her truthfulness, the commissioner implicitly casts doubt on Bahic's testimony. *See Broadlawns Med. Cent. v. Sanders*, 792 N.W.2d 302, 306 (Iowa 2010) (noting we give deference to the credibility determinations of the presiding officer).

Bahic asks us to find the testimony of the experts relied upon by the commissioner so flawed as not to constitute substantial evidence, but this is not the case where witness testimony was "so impossible or absurd and self-

contradictory that it should be deemed a nullity by the court." *Graham v. Chi. & Nw. Ry.,* 119 N.W. 708, 744 (Iowa 1909). While we may have drawn a different conclusion as fact finder, we conclude substantial evidence supports the commissioner's finding that Bahic's ongoing symptoms were not the result of the work injury.

Similarly, the determination of when a claimant has reached MMI is also within the discretion of the workers' compensation commissioner. *See, e.g.*, *Sanders*, 792 N.W.2d at 306–08 (reviewing the commissioner's MMI determination for substantial evidence to support the finding). The commissioner relied on the date of Dr. Boarini's letter indicating that Bahic had suffered only a minimal work injury, which was no longer the cause of the symptoms she claimed to be suffering, to determine MMI. The commissioner concluded Bahic had reached MMI on February 27, 2014. Dr. Sunil Bansal, who conducted an independent medical exam of Bahic in February 2015, opined that Bahic had not reached MMI until the date of her examination on February 27, 2015, but the commissioner determined Dr. Sansal's opinion was entitled to less deference than that of Dr. Boarini. Based on Dr. Boarini's opinion, there is substantial evidence to support the commissioner's determination that Bahic reached MMI on February 27, 2014.

Additionally, we consider whether there is substantial evidence in the record to support the commissioner's finding that Bahic did not suffer a permanent disability from the injury. *See, e.g.*, *Second Injury Fund v. Shank*, 516 N.W.2d 808, 814 (Iowa 1994) (concluding substantial evidence supporting the finding the claimant was permanently and totally disabled). Bahic claims the commissioner should have remanded to determine if she suffered a permanent disability with her

February 2013 injury, basing her argument on the commissioner's statement: "While it is possible claimant could prove the limited injury of February 11, 2013, was a cause for permanent disability, the evidentiary record contains insufficient support for this proposition." But Bahic had the burden to prove she had suffered a permanent disability. *See* Iowa R. App. P. 6.904(3)(e) ("Ordinarily, the burden of proof on an issue is upon the party who would suffer loss if the issue were not established."); *see also Michael Eberhart Const. v. Curtin*, 674 N.W.2d 123, 126 (Iowa 2004) (providing the two methods a claimant may utilize to meet their burden of establishing a permanent disability). Failing to meet her burden is not a reason for the case to be remanded.

The commissioner's determinations that Bahic's stipulated work injury was not the cause of a permanent disability and that any symptoms after the date of MMI—February 27, 2014—were not causally related to the stipulated work injury are supported by substantial evidence in the record.[3]

**B. Irrational, Illogical, and Wholly Unjustifiable.**

Next, Bahic maintains the commissioner's application of law to fact was irrational, illogical, or wholly unjustifiable. *See* Iowa Code § 17A.19(10)(m). Reviewing under this standard "requires us to allocate some deference to the

---

[3] Bahic claims certain medical expenses should be reimbursed because they were causally related to her injury and were authorized by Mercy. It is unclear what error Bahic is alleging with this claim; the commissioner ruled, "Defendants remain responsible for any claimed medical treatment which was authorized by defendants, as well as related medical mileage." As the commissioner recognized, Mercy is responsible for any expenses Bahic incurred receiving authorized medical care even after the date of MMI, as "section 85.27(4) does not require employees to prove medical causation in order to establish liability for authorized medical expenses." *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 773 (Iowa 2016). To do otherwise "would undermine the concept of authorized care and subject employees to retroactive liability for care they did not choose." *Id.* at 774.

commissioner's determinations, but less than we give to the agency's findings of fact." *Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 850 (Iowa 2009).

But here, Bahic uses the "illogical, irrational, and wholly unjustifiable" standard to again attack the commissioner's credibility findings regarding which expert opinions to afford the most weight. Such an attack is without merit, as determining credibility is not an application of law to fact.

Bahic argues the present facts are similar to those in *JBS Swift & Co. v. Hedberg*, 873 N.W.2d 276, at 280–81 (Iowa Ct. App. 2015), where a panel of our court determined the agency's finding of facts were not to be afforded the usual deference afforded the agency because "the record affirmatively disclose[d] the agency did not review and consider the evidence." In such a case, we concluded "the commissioner's designee's action [wa]s unreasonable, arbitrary, capricious, an abuse of discretion, and the product of illogical reasoning." *Swift*, 873 N.W.2d at 281 (citing Iowa Code § 17A.19(10)(i), (j), (m), & (n)).

But here, the commissioner's ruling establishes that the commissioner did review the evidence in the record before ultimately reaching conclusions at odds with those of the deputy commissioner. While the commissioner did not view the opinions of Drs. Boarini and Mendoza with the same misgivings as the deputy had expressed, it is the commissioner who is entitled to determine the credibility of the various witnesses. *See, e.g.*, *Schutjer*, 780 N.W.2d at 558 ("[W]e give due regard to the commissioner's discretion to accept or reject testimony based on his assessment of witness credibility."). Dr. Boarini opined—based on the tuning fork test—that Bahic was malingering, and Bahic claimed Dr. Boarini had never performed that evaluation. Unlike the deputy commissioner, the commissioner

found Dr. Boarini to be the more credible of two witnesses in that situation. Additionally, while Dr. Mendoza's testimony appeared to minimize the action Bahic was performing when she sustained the stipulated work injury, it was also true that no one witnessed Bahic sustain the injury. Moreover, her own description of the action—as found in the various medical records—is less than consistent. Some of the records describe the injury as Bahic testified, with lifting a loaded cart and twisting, while others simply state she was pushing a cart at the time of the injury.

Because this is not a case where the ruling establishes the commissioner failed to review and evaluate the evidence in the record, and because the commissioner's determination of credibility among experts is not an application of law to fact, we do not consider this claim further.

Based on the record before us, we cannot say the district court erred in affirming the ruling of the commissioner. We affirm.

**AFFIRMED.**