# IN THE SUPREME COURT OF IOWA

No. 08–1643

Filed December 23, 2010

**BROADLAWNS MEDICAL CENTER**,

Appellant,

vs.

**ROSE MARIE SANDERS**,

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.

Employee seeks further review of court of appeals' decision in appeal of workers' compensation judicial review decision. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND REVERSED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**

Michael L. Mock and D. Brian Scieszinski of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellant.

Michael R. Hoffmann of Hoffmann Law Firm, P.C., Des Moines, for appellee.

**TERNUS, Chief Justice.**

This workers' compensation case comes to us on further review from the court of appeals. The appellee, Rose Marie Sanders, asks us to reinstate an award of permanent partial disability (PPD) benefits made by the workers' compensation commissioner and affirmed by the district court, but reversed by the court of appeals for lack of substantial evidence. We agree with the district court that substantial evidence supports the commissioner's award of PPD benefits. Therefore, we reverse that part of the court of appeals' decision reversing the award of PPD benefits and affirm the district court's judicial review decision affirming the commissioner's award of these benefits.

We choose not to review the other issues raised by the parties in this appeal. *See Anderson v. State*, 692 N.W.2d 360, 363 (Iowa 2005) ("On further review, we can review any or all of the issues raised on appeal or limit our review to just those issues brought to our attention by the application for further review."). The court of appeals' decision stands as the final ruling on all other issues raised on appeal. *See Everly v. Knoxville Cmty. Sch. Dist.*, 774 N.W.2d 488, 492 (Iowa 2009).

**I. Background Facts and Proceedings.**

We limit our recitation of the evidence and history of this case to those facts and rulings that are pertinent to the issue we address on further review.

Starting in 1999, Sanders was a certified nursing assistant for appellant, Broadlawns Medical Center. On July 18, 2003, while working at Arlington House, a group home for the mentally ill operated by Broadlawns, Sanders discovered a client who had hung herself. Later, Sanders was required to clean the room in which the client had committed suicide. As a result of this experience, she began having

flashbacks, nightmares, and olfactory hallucinations. Three doctors diagnosed Sanders with posttraumatic stress disorder (PTSD) caused by her involvement with the suicide at Arlington House.

In February 2004, one of these physicians, Dr. Gallagher, permanently restricted Sanders from working at Arlington House. Broadlawns then assigned her to another group home, Oakland House. Sanders was able to work at Oakland House without the same reactions arising from work at Arlington House because she knew the clientele at Oakland House and felt comfortable that no client there would commit suicide. When Sanders had been assigned to Arlington House, she had worked about seventeen hours of overtime during each pay period. She earned only about five hours of overtime per pay period when assigned to Oakland House.

Nearly a year after the incident, on July 16, 2004, Dr. Gallagher reported that Sanders was at maximum medical improvement and reaffirmed her restriction from working at Arlington House. In a subsequent report dated July 21, 2004, Dr. Gallagher reiterated these opinions:

> I believe she is executing her current job well except when challenged to return to her former place of employment where the individual under her charge, Nicky, took her own life. She remains very sensitive to anything resembling criticism around this issue and reacts exceptionally strongly if there is a request for her to return to that facility. For all intents and purposes, I have restricted her from returning to work at Arlington and indicated she should stay where she is. If this request is honored, I think she will do acceptably well. She will quickly regress and become symptomatic if this request is ignored. Given her still present fragility, it does not help if it is suggested to her that in some way she is not "doing her job" by not returning to Arlington.
>
> I think that Ms. Sanders is at Maximum Medical Improvement. The rest will require tincture of time. She is free to return to see me on an as needed basis, which was reassuring to her. I don't see any reason to schedule regular

visits, though. She seems to conduct the rest of her life reasonably well. At best, I would say that she has a residual mild impairment. This impairment will become moderate to severe should she be forced to return to her original assignment.

On September 20, 2004, Broadlawns notified Sanders that it intended to terminate her employment due to her permanent work restrictions. Sanders then asked Dr. Gallagher to lift the restrictions. Based on her request, Dr. Gallagher recommended "that she be allowed to try and return to Arlington," but he "would not go so far to say the restrictions are eliminated entirely but rather that this be tried on a temporary basis to see how things go." Thereafter, Sanders continued to work at Oakland House and from time to time at Arlington House when an emergency necessitated her assistance. Sanders tried to work at a group home outside the Broadlawns system, but she experienced the same reactions to this home as she did with regard to Arlington House "due to her anxiety about the unpredictable behavior of certain clients."

In a report to Sanders' attorney dated March 3, 2005, Dr. Gallagher noted that Sanders' symptoms of PTSD "have diminished with the passage of time, as one would expect" and that "she was able to engage in her limited responsibilities at Arlington House and perform her duties without undue distress." Although Dr. Gallagher did not think Sanders had any impairment that would prevent her from performing the duties of her job, he did not recommend "that she ever be reassigned to Arlington House on a fulltime basis."

In an October 17, 2005 letter to Broadlawns' attorney, Dr. Gallagher stated that he did not know of any treatment that would take Sanders "any further in terms of returning to work at Arlington House on a fulltime basis." He concluded that, "if she remains working at her present location with occasional emergency duties at Arlington

House, she will do well as she has been doing." Dr. Gallagher saw "no point in scheduling any further appointments" for Sanders.

On October 24, 2005, Sanders was seen by Kenneth Mills, Ph.D., who administered various tests and concluded that Sanders suffered from anxiety, depression, and PTSD. He concluded Sanders had "the potential for further improvement" and "the application of appropriate psychological therapy techniques may serve to hasten her recovery." Because he thought it likely that Sanders "may experience continued improvement," Dr. Mills did not believe she had reached maximum medical improvement. Nonetheless, he stated that the "emotional and psychological sequelae" of the traumatic work event Sanders experienced were "likely to continue to affect [her] for the indefinite future." Dr. Mills agreed with Dr. Gallagher that Sanders should not work at Arlington House and opined that she "is likely to experience difficulty working in situations that remind her of Arlington House."

On January 6, 2006, Dr. Gallagher again stated that Sanders was at or near maximum medical improvement. He reaffirmed the restriction against work at Arlington House and again described Sanders' impairment as mild. Despite this report and his July 16, 2004 assessment, Dr. Gallagher signed an April 3, 2006 letter written by counsel for Broadlawns, indicating his agreement with the following opinions:

1. Rose Sanders currently has no restrictions or limitations other than avoiding the Arlington House.
2. Ms. Sanders is capable of performing substantially similar employment at locations other than the Arlington House.
3. Ms. Sanders' condition is expected to improve and should resolve over time.
4. You are unable to state that Ms. Sanders' condition is permanent in nature.

Sanders filed this action for workers' compensation benefits. She sought PPD benefts based on Dr. Gallagher's assessment that she was at maximum medical improvement on July 16, 2004, and had a mild impairment. Although Broadlawns stipulated that Sanders had suffered a psychological injury, it contested that her injury was permanent. The deputy commissioner who heard the case found that Sanders presently suffered from a psychological impairment and that she had a thirty percent industrial disability. The decision of the deputy commissioner who heard the evidence was adopted as the final agency decision by the commissioner.

On judicial review, Broadlawns argued the commissioner's conclusion that Sanders suffered a permanent disability was not supported by substantial evidence in the record. The district court affirmed the award of PPD benefits, concluding "[i]t was the agency's right and responsibility to resolve the apparent inconsistencies in the medical evidence regarding the permanency of Sanders' condition."

Broadlawns appealed, and its appeal was transferred to the court of appeals. That court held the record lacked the necessary expert testimony "that Sanders's injury was permanent," and so it reversed the award of PPD benefits. We granted Sanders' application for further review.

## II. Scope of Review.

Our review in a workers' compensation action is governed by Iowa Code chapter 17A. *See* Iowa Code § 86.26 (2009). Under that chapter, we may reverse an agency decision when

> a determination of fact clearly vested by a provision of law in the discretion of the agency . . . is not supported by substantial evidence in the record before the court when that record is viewed as a whole.

*Id.* § 17A.19(10)(*f*); *accord Kohlhaas v. Hog Slat, Inc.*, 777 N.W.2d 387, 391 (Iowa 2009). Because " 'factual findings regarding [an] award of benefits are within the agency's discretion, . . . we are bound by the agency's findings of fact if supported by substantial evidence.' " *Keystone Nursing Care Ctr. v. Craddock*, 705 N.W.2d 299, 304 (Iowa 2005) (alteration in original) (quoting *Clark v. Vicorp Rests., Inc.*, 696 N.W.2d 596, 604 (Iowa 2005)).

"In assessing evidentiary support for the agency's factual determinations, we consider evidence that detracts from the agency's findings, as well as evidence that supports them, giving deference to the credibility determinations of the presiding officer." *Lange v. Iowa Dep't of Revenue*, 710 N.W.2d 242, 247 (Iowa 2006) (citing Iowa Code § 17A.19(10)(*f*)(3)). We also consider "the agency's explanation of why the relevant evidence in the record supports its material findings of fact." Iowa Code § 17A.19(10)(*f*)(3). In our evaluation of the evidence, we focus not on whether the evidence would support a different finding than the finding made by the commissioner, but whether the evidence supports the findings actually made. *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006).

### III. Permanent Partial Disability Benefits.

Broadlawns contends the commissioner erred in finding that Sanders sustained a permanent injury because no expert testified that her injury was permanent and two experts testified that her condition "should continue to improve." Before we examine the evidence, it is helpful to review the controlling legal principles.

Injured employees are entitled to compensation "for permanent disabilities." Iowa Code § 85.34. For unscheduled injuries resulting in a permanent partial disability, such as the mental injury sustained by

Sanders, compensation for the disability is based on the employee's reduction in earning capacity. *Id.* § 85.34(2)(*u*). Compensation for permanent partial disability begins "at the termination of the healing period." *Id.* § 85.34(2). The healing period ends when (1) "the employee has returned to work," (2) "it is medically indicated that significant improvement from the injury is not anticipated," or (3) "the employee is medically capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of injury." *Id.* § 85.34(1).

Even when healing period benefits have ceased, an assessment of the permanency of the claimant's disability cannot be made until the claimant's disability has stabilized, i.e., when "it is medically indicated that significant improvement from the injury is not anticipated." *Id.*; *see Bell Bros. Heating & Air Conditioning v. Gwinn*, 779 N.W.2d 193, 199–200, 202 (Iowa 2010) (holding award of PPD benefits was premature when claimant's condition had not reached maximum medical improvement). "[S]tabilization is the event that allows a physician to make the determination that a particular medical condition [and hence, the resulting functional impairment] is permanent." *Bell Bros. Heating & Air Conditioning*, 779 N.W.2d at 200; *see also Pitzer v. Rowley Interstate*, 507 N.W.2d 389, 391–92 (Iowa 1993) (interpreting section 85.34(1) language, "significant improvement from the injury is not anticipated," as referring to stability of those aspects of the injury impacting the claimant's industrial disability). Any disability that remains after stabilization of the condition will support an award of permanent partial disability benefits to the extent the residual impairment decreases the claimant's earning capacity.

As this review of the statutory scheme for PPD benefits and the specific statutory language reveals, a claimant is entitled to PPD benefits upon proof that "it is medically indicated that *significant* improvement from the injury is not anticipated." Iowa Code § 85.34(1) (emphasis added). The commissioner relied on Dr. Gallagher's multiple assessments that Sanders had reached maximum medical improvement to find that Sanders had suffered a permanent injury entitling her to PPD benefits. The commissioner considered Dr. Gallagher's April 2006 statement that he could not say Sanders' condition was permanent, explaining why he rejected this statement in determining whether Sanders had sustained a permanent disability:

> The fact Dr. Gallagher is reluctant to call her condition permanent in his response to a letter from defendant's counsel reflects more his hope the condition will improve than it does an opinion it is temporary only. It is clearly a permanent condition in that it has not resolved over three years later. She clearly has a mild psychological condition that would limit her ability to compete with other workers for similar jobs with other employers.

This interpretation of Dr. Gallagher's statement regarding permanency—as his hope for Sanders—is consistent with Dr. Gallagher's conclusion that there was nothing further he could offer Sanders in terms of treatment.

It is the commissioner's responsibility to weigh conflicting evidence and accept that which he finds most credible. Dr. Gallagher stated on multiple occasions that Sanders had reached maximum medical improvement. In the April 2006 letter upon which Broadlawns places great reliance, Dr. Gallagher stated that Sanders' condition "*should resolve over time*" and that he could not say her condition was permanent. (Emphasis added.) Notably, he did not give a medical opinion that her condition *would* improve or that her condition was *not*

permanent. Moreover, the April 2006 letter did not necessarily contradict Dr. Gallagher's earlier opinions that Sanders had reached maximum medical improvement, i.e., that he did not anticipate "significant improvement from the injury." Iowa Code § 85.34(1).

Given the nature of Dr. Gallagher's April 2006 opinions, we cannot say the commissioner was required to accept them as a credible basis upon which to find Sanders' condition was not permanent. *See Kohlhaas*, 777 N.W.2d at 392 (holding "the commissioner finds the facts as they stand at the time of the hearing and should not speculate about the future course of the claimant's condition"). Dr. Gallagher's opinions that Sanders had reached maximum medical improvement and had "*at best . . .* a mild residual impairment" provide substantial evidence in support of the commissioner's finding of permanency. (Emphasis added.)

### IV. Summary and Disposition.

We conclude the commissioner relied upon substantial evidence in the record to find that Sanders had reached maximum medical improvement resulting in a permanent disability entitling her to permanent partial disability benefits under section 85.34. On this point, therefore, we reverse the court of appeals and affirm the district court and commissioner. The court of appeals' disposition of the other issues raised on appeal stand as the final decision on those matters.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND REVERSED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**

All justices concur except Wiggins, J., who takes no part.