**IN THE COURT OF APPEALS OF IOWA**

No. 23-1357
Filed August 21, 2024


XPO LOGISTICS and INDEMNITY INSURANCE GROUP COMPANY OF NORTH AMERICA,
     Plaintiffs-Appellants,

vs.

CRAIG IVESTER,
     Defendant-Appellee.
_____


     Appeal from the Iowa District Court for Polk County, Heather Lauber, Judge.


     An employer appeals the district court's ruling on judicial review of agency action. **AFFIRMED.**


     Timothy W. Wegman, Jordan R. Reed (until withdrawal), and Morgan R. Todd Borron of Peddicord Wharton, LLP, West Des Moines, for appellant.

     Darin Luneckas of Luneckas Law, P.C., Cedar Rapids, for appellee.


     Considered by Badding, P.J., Langholz, J., and Bower, S.J.*

     *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).


.

**BADDING, Presiding Judge.**

XPO Logistics[1] appeals a district court ruling on judicial review affirming a workers' compensation decision that awarded Craig Ivester permanent total disability benefits.[2] The only question before us is whether the commission's fact-findings are supported by substantial evidence. *See* Iowa Code § 17A.19(10)(f) (2022); *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 530 (Iowa 2017) (outlining the standard for judicial review of agency decisions). We conclude they are and affirm the district court.

On June 8, 2016, Ivester felt his back pop while helping another driver off load some weight from a tractor trailer at a weigh station. An MRI showed a disc protrusion at the L5–S1, with the protrusion displacing the left descending sacral nerve root and extending across midline and abutting the right sacral nerve root. Ivester underwent surgery—a left L5–S1 diskectomy—in October. After the surgery, Ivester's left-side symptoms improved. But he almost immediately started experiencing numbness, pain, and weakness on his right side. Those symptoms got progressively worse over the next few years.

Ivester has not worked since May 2019. He applied for workers' compensation benefits in September for his lower back. XPO stipulated that Ivester's herniated disc was a work-related injury but argued that his ongoing right-side symptoms were unrelated to that injury. In a thorough arbitration decision, a

---

[1] This litigation also involves XPO's insurance carrier, Indemnity Insurance Company of North America, collectively XPO.

[2] The proceedings combined two claims from two injuries, one to Ivester's lower back in June 2016 and one to his left shoulder in April 2018. This appeal only concerns the back injury.

deputy commissioner rejected that argument, as did the commissioner on intra-agency appeal and the district court on judicial review. The deputy relied on the unrefuted opinions of two experts—Dr. Stanley Mathew and Dr. David Segal—"who opined that [Ivester's] ongoing low back and lower extremity symptoms, including his right-side symptoms, are related to the work injury of June 8, 2016."

Dr. Mathew, who provided Ivester with pain management for his lower back, performed an electrodiagnostic study in May 2019 that was "consistent with a right S1 radiculopathy." After reviewing Ivester's medical records, including his three MRIs, Dr. Mathew noted the "initial injury caused a massive herniated disc which irritated multiple levels and bilateral S1 nerve roots." He concluded that Ivester's "most significant symptoms after his June 8, 2016 work injury were on the left side though surgery did improve his symptoms. He has now progressed to have more radicular pain on the right side. This happens quite often after surgical revision of the spine."

Dr. David Segal, a neurosurgeon, agreed with Dr. Mathew after performing an independent medical examination of Ivester in August 2020:

> The bilateral radiculopathies were caused by the disc herniation, the pressure, and the inflammatory process. The left side resolved with surgery; the right side continued. However, the right-sided radiculopathy is clearly caused by the work injury. Were it not for the work injury, Mr. Ivester would not have had the right S1 radiculopathy. There was no intraoperative complication or incident that caused this. . . . [T]he act of decompressing the right S1 nerve [during surgery] could have caused increased symptomatology and autonomic and sympathetic injury. There is no other likely cause of the progression of the right S1 radiculopathy—the right S1 symptoms represent progression of the work injury of June 8, 2016.

In plainer terms, Dr. Segal stated: "[T]he fact that Mr. Ivester's right S1 radiculopathy appeared worse following the surgery and continued to progress is

not a medical mystery—it is clearly understood from this injury, and the sequence of events are the type seen in a neurosurgical practice."

On appeal, XPO resurrects the argument it made at the agency level—that, since the surgery following the injury was to address a *left* lumbar disc herniation and symptoms to the left lower extremity resolved, then symptoms to the *right* lower extremity with no "immediate onset" cannot be causally related to the injury. But "[m]edical causation presents a question of fact that is vested in the discretion of the workers' compensation commission." *Cedar Rapids Cmnty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011). And that issue "is essentially within the domain of expert testimony," which the commission is free to accept or reject. *Id.* (citation omitted). XPO presented no medical evidence that was contrary to the causation opinions of Drs. Mathew and Segal, and the remaining evidence in the record was consistent with their opinions, despite XPO's claims to the contrary on appeal. *See id.* at 845–49 (finding substantial evidence to support causation based on expert opinion consistent with remaining evidence).

Yet XPO contends that because Ivester went from January 2017 through April 2018 without treatment for his right-side symptoms, the agency's decision is not supported by substantial evidence. But during that period, Ivester did seek treatment, only to be rebuffed by XPO and its insurance carrier. He ended up having to obtain his own independent treatment, which targeted his ongoing back pain. While Ivester was working for XPO without restrictions during that stretch, his job was modified to suit his abilities given his symptoms.

"Evidence is not insubstantial merely because different conclusions may be drawn from the evidence." *Id.* at 845. Because the evidence supports the findings

actually made, *see id.*, we agree with the district court that the commissioner's finding on causation is supported by substantial evidence.

XPO alternatively challenges the commission's finding that Ivester had reached maximum medical improvement "because there were anticipated future treatments beyond pain management, which could affect his functional impairment." "[A] claim for permanent disability benefits is not ripe until maximum medical improvement has been achieved." *Bell Bros. Heating & Air Conditioning v. Gwinn*, 779 N.W.2d 193, 201 (Iowa 2010). An individual reaches maximum medical improvement when "it is medically indicated that significant improvement from the injury is not anticipated." *See Broadlawns Med. Ctr. v. Sanders*, 792 N.W.2d 302, 307 (Iowa 2010) (citation omitted).

The "anticipated future treatments" that XPO argues negate maximum medical improvement are trigger-point injections, fusion surgery, and "the possibility of a spinal stimulator." The record, however, shows the injections were intended to manage Ivester's pain and would not result in remission of his condition. *See Wal-Mart Stores, Inc. v. Fulk*, No. 01-1782, 2002 WL 1758267, at *1 (Iowa Ct. App. July 31, 2002) (finding pain management treatment did not negate maximum medical improvement because it was "not likely that further treatment of continuing pain . . . will decrease the extent of permanent industrial disability"). As for the fusion surgery, a neurosurgeon that Ivester saw for a second opinion only said that before surgery was possible, Ivester would need to lose weight. Even then, the neurosurgeon concluded surgery would not be beneficial. With respect to the spinal stimulator, Ivester agreed with XPO's counsel that "no one's recommended that at this point in time." Because these treatments were

either limited to pain management or not anticipated, we agree with the district court that the commissioner's finding on maximum medical improvement is supported by substantial evidence.

For these reasons, we affirm the district court's conclusions that the challenged findings are supported by substantial evidence.

**AFFIRMED.**