# IN THE COURT OF APPEALS OF IOWA

No. 23-1003
Filed January 9, 2025


**DONALD TURNER,**
Petitioner/Cross Respondent-Appellant/Cross-Appellee,

**vs.**

**NCI BUILDING SYSTEMS and LIBERTY MUTUAL INSURANCE COMPANY,**
Respondents/Cross Petitioners-Appellees/Cross-Appellants.
_____


Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.


A worker appeals, and an employer cross-appeals, the district court's denial of their petition and cross-petition for judicial review of the workers' compensation commissioner's ruling. **AFFIRMED ON APPEAL AND CROSS-APPEAL.**


Thomas M. Wertz and Mindi M. Vervaecke of Wertz Law Firm, P.C., Cedar Rapids, for appellants.

Christopher S. Spencer and Stephen W. Spencer of Peddicord Wharton, LLP, West Des Moines, for appellees.


Heard by Schumacher, P.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

After suffering serious injuries from a thirty-foot fall onto a concrete floor at work, Donald Turner was awarded permanent partial disability benefits by the workers' compensation commissioner. Neither Turner nor his employer, NCI Building Systems, was completely satisfied with the commissioner's decision. So they both petitioned for judicial review.

NCI seeks reversal of the commissioner's decision that the work injury caused Turner's mental-health condition, arguing the decision is unsupported by substantial evidence and based in part on a medical report that Turner submitted after the hearing. In contrast, Turner challenges the commissioner's finding that the mental-health condition is not permanent and contends that we should find that it is—and thus increase his permanent disability award—or remand to the commissioner to award healing-period benefits that he did not originally request.

Separate from the mental-health-condition issues, NCI also seeks reversal of the commissioner's finding that Turner's physical injuries resulted in an unscheduled industrial disability rather than scheduled injuries, despite NCI's contrary admission. And NCI argues that even if it is an industrial disability, the evidence does not support the commissioner's forty percent award.

The district court affirmed the commissioner, and both parties again appeal. But we agree that the evidentiary ruling was not an abuse of discretion, all the challenged findings are supported by substantial evidence, and the commissioner's decision is not otherwise unreasonable, arbitrary, capricious, irrational, illogical, or wholly unjustifiable on any issue properly preserved for our review. We thus affirm on both the appeal and cross-appeal.

## I.     Background Facts and Proceedings

Turner was employed by NCI as a full-time maintenance technician.  At work in August 2018, Turner used a scissor lift to perform maintenance on a crane roughly thirty feet in the air.  The crane moved, knocking over the scissor lift and crashing Turner to the concrete floor below.  Turner was severely injured, suffering a vertebral compression fracture, several rib fractures, a mildly displaced right shoulder blade fracture, a fractured right tibia (lower leg), a fractured left calcaneus (heel) and multiple fractures in his right foot and ankle.  He was air-flighted to the University of Iowa Hospitals and Clinics, where he was hospitalized for twenty-two days.  He had multiple surgeries.  And even after his release, his continued treatment was extensive.

Eleven months after his injury, Turner returned to his maintenance position with NCI.  His pay and job requirements stayed the same.  But many work activities were painful, and Turner took breaks as he needed to relieve his constant pain.

Turner worked until January 2020, when NCI offered him a voluntary furlough.  He did not return from the furlough until March, then worked one month before the COVID-19 pandemic shut down NCI's operations and he was furloughed again.  He remained furloughed until his position was downsized and cut in September.  Turner received severance pay as a result, and he filed for disability benefits shortly after.

After his employment with NCI ended, Turner began telling his doctors that he was suffering from mental-health issues.  One doctor's notes from November reported that he was "quite down and demoralized" and was "having significant discomfort" that affected "the quality of his life."  Another noted that his "mood has

been [a]ffected by the pain and being let go by his work." And Turner was diagnosed with situational depression and prescribed medication to treat it. Turner believes that his mental-health condition stems from the pain suffered from the work injury and is proximately caused by the injury.

This proceeding started when Turner petitioned for workers' compensation benefits against NCI and its insurer, Liberty Mutual Insurance Company.[1] The claim was heard by a deputy commissioner at a video hearing in May 2021. At the hearing, Turner asked to hold the record open for the submission of two additional reports—a rebuttal report by his expert witness and an evaluation by a pain psychologist at an appointment scheduled to take place days after the video hearing. The deputy commissioner agreed to hold the record open for the rebuttal report but not for the pain psychologist's evaluation. Turner still submitted the pain psychologist's evaluation with a renewed motion to admit it.

In a February 2022 decision, the deputy commissioner found that Turner proved "permanent impairment in the bilateral lower extremities, left shoulder, and thoracic spine" caused by the thirty-foot fall at work. And reasoning that this was an unscheduled injury compensated as an industrial disability, the deputy commissioner found that Turner proved a forty percent loss of earning capacity as a result of the work injury. The deputy commissioner denied Turner's renewed request to admit the pain psychologist's evaluation—accepting it only as an offer

---

[1] Because the interests of NCI and its insurer are fully aligned in this appeal and the underlying workers' compensation proceeding, for simplicity we do not distinguish between them and refer to either or both as NCI throughout this opinion.

of proof—and rejected Turner's argument that his mental-health condition stemmed from the work injury.[2]

Turner unsuccessfully sought rehearing before the deputy commissioner. And then both Turner and NCI appealed the decision to the workers' compensation commissioner. The commissioner reversed the deputy commissioner's decision in part and affirmed it in part. The commissioner agreed with Turner that the record should have been held open to admit the pain psychologist's evaluation. And conducting an extensive de novo review of all the evidence, the commissioner found that Turner had proved his mental-health condition was caused by the work injury. Even so, the commissioner found that Turner had not proved that the mental-health condition was permanent and thus concluded that "no additional industrial disability benefits should be awarded at this time." The commissioner also rejected NCI's challenges to the forty percent industrial disability award without additional analysis.

Turner petitioned—and NCI cross-petitioned—for judicial review of the commissioner's decision under Iowa Code chapter 17A (2022). The parties made essentially the same arguments they do here. And the district court rejected them all, affirming the commissioner's decision in its entirety in a thorough twenty-two-page ruling. So both parties again appeal.

## II.    Mental-Health Condition

A judicial review proceeding is appellate in nature—in the district court too. *See Black v. Univ. of Iowa*, 362 N.W.2d 459, 462–63 (Iowa 1985). So on appeal,

---

[2] The decision also resolved several other disputes that are not at issue on appeal.

we apply the same statutory standards of review of the agency action as the district court. *See Carreras v. Iowa Dep't of Transp.*, 977 N.W.2d 438, 444 (Iowa 2022).

A court "shall reverse" an agency action if the petitioner shows the action was "[b]ased upon a determination of fact clearly vested by a provision of law in the discretion of the agency that is not supported by substantial evidence in the record before the court when that record is viewed as a whole." Iowa Code § 17A.19(10)(f). On a challenge to an agency's "application of law to fact," we will reverse only when the action is "[b]ased upon an irrational, illogical, or wholly unjustifiable application." *Id.* § 17A.19(10)(m). And reversal is also warranted if the petitioner shows the agency's decision is "otherwise unreasonable, arbitrary, capricious, or an abuse of discretion." *Id.* § 17A.19(10)(n).

Challenging agency action on any of these bases—rather than an error of law—is a heavy lift. *See McComas-Lacina Constr. v. Drake*, No. 15-0922, 2016 WL 2744948, at *1 (Iowa Ct. App. May 11, 2016) ("A case reversing final agency action on the ground the agency's action is unsupported by substantial evidence or is irrational, illogical, or wholly unjustifiable is the Bigfoot of the legal community—an urban legend, rumored to exist but never confirmed."). "It is the commissioner's duty as the trier of fact to determine the credibility of the witnesses, weigh the evidence, and decide the facts in issue." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394–95 (Iowa 2007). So the fight on factual matters and judgment calls is fought mainly before the agency—not a court. *See Sellers v. Emp't Appeal Bd.*, 531 N.W.2d 645, 646 (Iowa Ct. App. 1995).

Evidence is substantial if it "would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the

consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). "Evidence is not insubstantial just because it could lead reasonable minds to different conclusions." *Archer Daniels Midland v. Williams*, 3 N.W.3d 231, 234 (Iowa Ct. App. 2023). We do not ask "whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence, viewing the record as a whole, supports the findings actually made." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011). And "evidence may be substantial even though we may have drawn a different conclusion as fact finder." *Id.*

*Admissibility of the Pain Psychologist's Evaluation.* Before considering the substantive challenges to the commissioner's decision on Turner's mental-health condition, we must first address NCI's claim that the decision was based on improperly admitted evidence. Turner asked for the record to be held open so he could introduce a pain psychologist's evaluation from an appointment scheduled just after the hearing in the case. The deputy commissioner declined to leave the record open to allow admission, reasoning that the evidence would be cumulative, prejudicial to NCI, and delay the decision-making process. But the commissioner disagreed and admitted the report. The commissioner reasoned that the report was not cumulative and that NCI—rather than Turner—was responsible for the delay because NCI had refused authorization when Turner had scheduled the appointment five months earlier and resisted Turner's application for alternate care seeking authorization for the appointment before relenting and authorizing the appointment only shortly before the hearing.

We review the commissioner's decision on whether to permit admission of untimely evidence under its rules for abuse of discretion. *See Hagen v. Serta/Nat'l Bedding Co.*, 1 N.W.3d 1, 4–5 (Iowa 2024); *see also Haynes v. Second Inj. Fund*, 547 N.W.2d 11, 14 (Iowa Ct. App. 1996) (reviewing decision whether to leave the record open for more evidence for abuse of discretion). Deference is particularly appropriate on such decisions "because the commissioner is statutorily required to '[a]dopt and enforce rules necessary to implement' Iowa's workers' compensation laws." *Hagen,* 1 N.W.3d at 4 (quoting Iowa Code § 86.8(1)(a) (2021))[3] (alteration in original). So we apply a "lenient standard," viewing the agency record with an eye to "uphold, rather than defeat, the agency's decision" unless the decision is "clearly against reason and evidence." *Id.* at 5–6 (cleaned up).

The commissioner's decision to admit the report was not clearly against reason and evidence. The record supports the commissioner's finding that NCI caused the delay in submitting the report by refusing to authorize the scheduling of the appointment until just before the hearing and it was not unreasonable for the court to factor that into his decision. It matters not that the commissioner might well have chosen to exercise his discretion to exclude the report, "because the commissioner has the ultimate responsibility for deciding cases in an expeditious and timely manner, and we should not infringe upon a decision that is well within his prerogative." *Id.* at 7 (cleaned up).

---

[3] Effective July 1, 2023, section 86.8 was transferred to section 10A.310 without making any changes to its text as part of a government reorganization statute. *See* 2023 Iowa Acts, ch. 19, § 1477(1)(h).

NCI contends that the commissioner's decision violated an administrative rule providing that "[n]o evidence shall be taken after the hearing." Iowa Admin Code r. 876-4.31. But this rule is not implicated when a party merely seeks to hold the hearing record open for the submission of evidence as Turner sought to do here and the commissioner ultimately agreed should have been allowed. When the record is left open, the evidence is essentially still taken during the hearing—not after. NCI has pointed us to no contrary authority and the practice of leaving the record open appears unremarkable in the cases. *See, e.g.*, *Monsanto v. Delgado*, No. 16-0660, 2017 WL 510949, at *1 n.1 (Iowa Ct. App. Feb. 8, 2017) (noting favorably decision to leave the record open sixty days); *Hagen*, 1 N.W.3d at 6 (noting that the commissioner had acknowledged that deputies often kept the record open rather than excluding evidence). Indeed, when the deputy commissioner was considering Turner's request, NCI did not argue that the administrative rule deprived it of authority to do so.[4] The report's admission was not an abuse of discretion.

*Causation of the Mental-Health Condition.* NCI also argues that, even if the report was properly admitted, substantial evidence in the record as a whole does not support the commissioner's finding that Turner's mental-health condition was caused by his August 2018 work injury. Turner's mental-health condition is compensable only if he shows it "arose out of and in the course of his employment." *Dunlavey v. Econ. Fire & Cas. Co.*, 526 N.W.2d 845, 849 (Iowa 1995); *see also* Iowa Code § 85.3(1) ("Every employer . . . shall provide, secure, and pay

---

[4] And the deputy commissioner did hold the record open for the submission of other evidence after the live video hearing—a decision not challenged by NCI now.

compensation according to the provisions of this chapter for any and all personal injuries sustained by an employee arising out of and in the course of the employment."). "Medical causation is essentially within the domain of expert testimony." *Pease*, 807 N.W.2d at 845 (cleaned up). And "whether to accept or reject an expert opinion is within the peculiar province of the commissioner." *Id.* (cleaned up).

NCI points to its expert's opinion—and other evidence suggesting—that Turner's mental-health condition was caused by issues other than the work injury. And NCI is not wrong that one could reach that conclusion from the evidence— indeed the *deputy* commissioner did. But Turner presented an expert opinion that his mental-health condition was caused by the work injury. That expert diagnosed Turner with "adjustment disorder"—just as NCI's expert did—and the commissioner found "no evidence claimant was diagnosed with, or treated for, an adjustment disorder prior to the work injury." Turner's expert also explained that Turner's "delay of onset of psychiatric symptoms is to be expected" because the disorder is caused by "the work-related injury *and* all the fallout from it, so it took some time for him to attempt to live his life again with demonstrably increased difficulty for the mental health aspect to blossom."

So the commissioner was essentially "confronted with a classic 'battle of the experts.'" *Id.* at 850. The commissioner carefully weighed the evidence in its decision and then concluded he found Turner's expert's "opinion more persuasive than [NCI's expert's] opinion." Given our deferential standard of review, we "are not at liberty to accept contradictory opinions of other experts in order to reject the finding of the commissioner." *Id.* (cleaned up). Substantial evidence supports the

commissioner's finding that Turner's mental-health condition was caused by the work injury. So we affirm on NCI's challenge to this finding.

*Permanency of the Mental-Health Condition.* On the flip side, Turner makes his own substantial-evidence challenge to the commissioner's finding that he failed to prove that his mental-health condition is permanent.[5] *See Broadlawns Med. Ctr. v. Sanders*, 792 N.W.2d 302, 306 (Iowa 2010) ("Injured employees are entitled to compensation 'for permanent disabilities.'" (quoting Iowa Code § 85.34)). He contends that this finding should be reversed and the case should be remanded to the commissioner to consider an increase in the level of industrial disability. But Turner faces just as steep a climb as NCI does in fighting this factual dispute here on judicial review.

In making this finding, the commissioner relied mainly on the report of Turner's expert, who opined that if Turner's "stressor (i.e., the work-related injury and all [its] various components, such as chronic pain) is not resolved, the Adjustment Disorder will be permanent." The commissioner reasoned that his expert "has not opined [Turner's] adjustment disorder with mixed anxiety and depressed mood is permanent" and that "[n]o physician or psychologist has opined claimant's mental health condition is permanent." Indeed, Turner's expert reiterated elsewhere in the report, "it remains to be seen how much impairment will

---

[5] Turner also includes a stray reference in a heading for this argument that the decision "is unreasonable, arbitrary, capricious, [and] an abuse of discretion." (Capitalization omitted). But his argument focuses on the lack of substantial evidence. We do the same because failing to flesh out arguments on the other grounds waives them. *See* Iowa R. App. P. 6.903(2)(a)(8)(3).

be permanent" because Turner's "mental health condition (i.e., his Adjustment Disorder) is currently untreated."

Turner has not pointed to contrary expert evidence that his mental-health condition was permanent at the time of the hearing. He mostly attacks the commissioner's interpretation of his expert's equivocation about permanency as hyper-technical. But we do not get to weigh the evidence anew. And it matters not if the commissioner could have also found that the condition was permanent. *See Pease*, 807 N.W.2d at 845. Substantial evidence supports the decision that the commissioner *did* make. And we thus affirm Turner's challenge to the commissioner's finding that he failed to prove his mental-health condition is permanent.

*Alternative Benefits.* Turner alternatively urges us to award healing-period benefits until the mental-health condition is properly treated.[6] But NCI correctly argues that this claim is not properly preserved. Turner did not seek such benefits before the deputy commissioner, choosing only to argue for an increased level of industrial disability based on a permanent mental-health disability. When the deputy commissioner rejected that argument—finding he had not proved his mental-health condition was caused by the injury at all—he kept all his eggs in that same basket and did not argue for any healing-period benefits in his request for rehearing to the deputy or his appeal to the commissioner.

---

[6] Turner does not argue to us—nor did he ever before the agency—that the commissioner's decision to award any permanent disability benefits was premature and thus should be remanded in its entirety for a new decision only after it is ripe. *See Bell Bros. Heating & Air Condition v. Gwinn*, 779 N.W.2d 193, 199–202 (Iowa 2010).

To be sure, Turner did summarily bring up the issue in his motion for rehearing by the commissioner. But doing so then was too late for two reasons. First, raising a new issue at this late stage was contrary to the agency rule. *See* Iowa Admin. Code r. 876-4.28(7) ("An issue will not be considered on appeal if the issue could have been, but was not, presented to the deputy workers' compensation commissioner."); *see also Boehme v. Fareway Stores, Inc.*, 762 N.W.2d 142, 146 (2009) (applying rule 4.28(7) when considering error-preservation on judicial review but finding error preserved because the rule only required raising an issue to the deputy—not a decision from the deputy). Because Turner did not present his claim for healing-period benefits to the deputy commissioner, the commissioner could not consider the issue for the first time at rehearing. *See* Iowa Admin. Code r. 876-4.28(7).

And second, even outside of workers' compensation cases, judicial "review is generally limited to questions raised at or before the hearing held by the agency." *Soo Line R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994). And Turner has not shown his rehearing motion fits into the "limited exceptions" where that motion can preserve the issue. *See id.* He could have raised the issue sooner. Given the factual nature, this is not a case where a motion for rehearing would have been the first opportunity to raise the issue. *See id.* (citing *Off. of Consumer Advocate v. Iowa State Com. Comm'n*, 465 N.W.2d 280, 283 (Iowa 1991)). And considering such a brand new fact-specific issue at that late stage would have unfairly prejudiced NCI. *See id.* (citing *Peterson v. Iowa Dep't of Transp.*, 508 N.W.2d 689, 692 (Iowa 1993)). So we will not reverse the agency for failing to

award benefits that it did not consider because Turner failed to request them at a proper time—waiting instead until the end of a two-year administrative process.

### III.    Industrial Disability

NCI also makes two challenges to the commissioner's forty percent permanent-partial-disability award.  First, it contends that Turner's injuries should be compensated as scheduled-member injuries rather than as an unscheduled industrial disability.  *Compare* Iowa Code § 85.34(2)(a)–(u)  (providing compensation for scheduled-member injuries), *with id.* § 85.34(2)(v) (providing for unscheduled industrial disability); *see also Chavez v. MS Tech. LLC*, 972 N.W.2d 662, 666–67 (Iowa 2022) (discussing the difference and explaining that workers typically receive less compensation for scheduled-member injuries than industrial disabilities).  But this argument fails out of the gate because NCI gave a legally binding admission that "Turner sustained industrial disability from his 8/01/18 work injury."

This admission was made pursuant to a request under Iowa Rule of Civil Procedure 1.510, which applies to proceedings before the workers' compensation commissioner.  *See* Iowa Admin. Code r. 876-4.35.  And so under Rule 1.511, it was "conclusively established in the pending action unless the [workers' compensation commissioner] on motion permits withdrawal or amendment of the admission."  Iowa R. Civ. P. 1.511; *see also Williams v. KW Prods., Inc.*, No. 09-1449, 2010 WL 1579521, at *3–4 (Iowa Ct. App. Apr. 10, 2010) (relying on admission in workers' compensation to conclude that as of the date of the admissions, "there was no longer an issue as to" the admitted matter even though

employer sent a supplemental denial because the employer never got "an agency ruling permitting the withdrawal or amendment of the admission").

The commissioner never granted NCI permission to withdraw or amend the admission. And it would have been prejudicial to do so as NCI belatedly requested in its post-hearing brief with no justification beyond its new assessment of the evidence already submitted at the hearing. *See Allied Gas & Chem. Co. v. Federated Mut. Ins.*, 332 N.W.2d 877, 880 (Iowa 1983) (recognizing "prejudice where a party is suddenly required to prove matters otherwise admitted"). Because Turner's industrial disability was conclusively established by the admission, it necessarily follows that substantial evidence supports the commissioner's finding.

Second, NCI argues that the amount of industrial disability award is excessive and should be reduced because the commissioner's finding of forty percent loss of earning capacity is not supported by substantial evidence. NCI focuses on the fact that Turner returned to work with no restrictions in arguing that Turner has shown "no loss in earning capacity." But while this and other evidence NCI points to might support its view, that is not the question before us. *See Pease*, 807 N.W.2d at 845. We ask only if the evidence would support the commissioner's finding. *See id.* The deputy commissioner carefully weighed the competing medical evidence, Turner's testimony about his current pain and the difficulties he had during the short period when he had returned to work, Turner's failure to search for alternative work, and the lack of vocational expert opinion to reach his decision that Turner proved a forty percent loss of future earning capacity. In doing so, the deputy commissioner agreed with NCI in part by rejecting Turner's

argument that he was totally disabled. And the commissioner agreed with this decision. We cannot say that this finding is unsupported by substantial evidence. So we affirm the commissioner's finding of forty percent industrial disability as well.

**AFFIRMED ON APPEAL AND CROSS-APPEAL.**